UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER McCLOUD,

                                        Plaintiff,

         -v.-                                                    9:07-CV-0650
                                                                 (NAM)(GHL)
C. TUREGLIO, Correctional Officer,
Greene Correctional Facility,

                                        Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

CHRISTOPHER McCLOUD, 06-R-5154
     Plaintiff, *Pro Se*
Wallkill Correctional Facility
Box G
Wallkill, NY 12589

HON. ANDREW M. CUOMO                             CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York       Assistant Attorney General
     Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

         This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local

Rules of Practice for this Court.  In his Complaint, Christopher McCloud ("Plaintiff") alleges

that, on May 31, 2007, at Green Correctional Facility ("Green C.F."), Correctional Officer C.

Turriglio ("Defendant") physically assaulted and threatened Plaintiff in violation of his

constitutional rights.  (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)  Currently before the Court is Defendant's

motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be

granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 11.)  For the reasons set forth below, I

recommend that the Court grant Defendants' motion to dismiss.

## I.      BACKGROUND

### A.      Summary of Plaintiff's Complaint

On June 20, 2007, Plaintiff filed his Complaint in this action.  (Dkt. No. 1 [Plf.'s

Compl.].)  The factual allegations giving rise to Plaintiff's (unspecified) constitutional claim

against Defendant Turriglio are as follows:

> On May 31, [20]07 I came to my program late[.]  [My program] . . . is
> Mess [H]all [during the] P.M. and late eve[ning shift].  [F]or coming
> in late I was placed in the pot room[.]  [M]y regular job title is 2
> ser[v]er on the C-side line[.]  [W]hile I was in the pot room I was
> making noise and Officer Tureglio [sic] came into the pot room and
> started banging pots and curs[]ing at me[,] telling me to shut up[.]
> [A]fter that he told me to stop eye balling him or he'll pull my eyes
> from my skull[.]  [A]t 2:30 P.M. [it] is count time and all inmates must
> report to the din[]ing are[a] for count[.]  [A]fter count he called me to
> his office and took me to the back of the Mess [H]all out of plain view
> and placed me o[n] the wall and started to slap me [o]n the back of the
> head[.]  [A]fter his as[sa]ult he placed his pocket knife to his face and
> told me he'll cut hi[m]self and say I did it [in order to] let the other
> inmates know he's not play[ing around].

(Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)  As a result of this alleged misconduct, Plaintiff is requesting

three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will

be []no[] retaliation from coworkers or staff"; (2) a court order directing that a search be

performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against

him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress."  (*Id*.

2

at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff provided some information regarding his efforts to exhaust his available administrative remedies before filing this action. Specifically, in response to a question reading "Is there a prisoner grievance procedure at this facility?" Plaintiff checked the box reading "Yes." (*Id*. at ¶ 4[a].)  In response to a question reading "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?" Plaintiff checked the box reading "No." (*Id*. at ¶ 4[b].)  In response to a question reading "If your answer to 4(b) is NO: Why did you choose to not present the facts relating to your complaint in the prison's grievance program?" Plaintiff stated, "Because I fear retaliation from officers and the officer [I]'m fil[]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent." (*Id*.)  Finally, in elaboration on this last assertion, Plaintiff stated later on in the Complaint that "[t]he officer [I]'m fil[]ing [this action] againsts uncle [sic] is a Superintendent here at Green Corr." (*Id*. at ¶ 4[c].)

### B.     Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint

On June 22, 2007, Plaintiff filed a letter to the Clerk of the Court.  (Dkt. No. 6.)  The stated purpose of the letter was to serve "as evidence in [Plaintiff's] case." (*Id*.)  The letter requested that his Complaint be amended to reflect that the correct spelling of Defendant's name was "C. Turriglio," not "Tureglio." (*Id*.)  (The Court subsequently directed that the docket be so amended.)  In addition, the letter requested that a claim be "add[ed] to [Plaintiff's] complaint . . . ." (*Id*.)  The factual allegation giving rise to this claim was as follows:

3

> On June 18, 2007 Officer Turriglio made intimidating comments [to]
> me [and] taunt[ed] me[,] saying [']McCloud knows I doesn't [sic]
> play[.]  Let them know[.']  [By 'them' he was] talking about new Mess
> [H]all workers.  I assumed he was back from vacation time or
> answering a grievance because he [was] brag[g]in' about laying on the
> beach when some inmates here at the facility filed a grievance against
> him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for

two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to amend

his Complaint, such permission was unnecessary under Fed. R. Civ. P. 15(a) since Defendant had

not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his

(one-page, single-spaced) letter serve as his amended pleading, such an amendment was

prohibited by Local Rule 7.1(a), which required that amended pleadings be complete pleadings

that superseded the original pleadings in all respects.  (Dkt. No. 7.)

However, Plaintiff did not subsequently file an Amended Complaint.  Rather, on August

8, 2007, Plaintiff filed another letter with the Court.  (Dkt. No. 12.)  The stated purpose of the

letter was to again request "the court[']s permission to amend [Plaintiff's] complaint."  (*Id.*)

Although Plaintiff used the word "amend," it was clear that what he was intending was a

"supplemental" complaint.  *See* Fed. R. Civ. P. 15(d).  This is because the factual allegations he

asserted in the letter arose from incidents occurring *after* the filing of his Complaint on June 20,

2007.  (Dkt. No. 12.)  In pertinent part, Plaintiff alleged as follows:

> On July 14, [20]07 the very next day [after speaking to a prison
> psychologist and Iman about the anxiety I was suffering due to my
> experience with Officer Turriglio] I was approached by [O]fficer
> Turriglio once I arrived . . . [at my] program.  Officer Turriglio told me
> [']I want to talk to you.[']  After program assi[]g[n]ments . . . [were]
> completed [O]fficer Turriglio pulled me to the side away from other
> inmate[]mess hall workers on the B side in the din[]ing area; [O]fficer

> Turriglio['s] exact words . . . [were] 'I spok[e] to the Imam [about]
> what[']s going on[.]  [Y]ou can talk to me man to man.  I must admit I
> was nervous when [O]fficer Turriglio approached me.  I started
> studdering [sic] when I spoke and made up a lie. . . .  After that
> [O]fficer Turriglio walked away.

(*Id*. at 1.)  In addition, Plaintiff attempted to assert a claim against various (unidentified) non-

parties.  In pertinent part, Plaintiff alleged as follows:

> On July 24, [20]07 I was called to the sergeant[']s office[] and forced
> to write a statement [about what had taken place between Plaintiff and
> Officer Turriglio] that is false . . . .  When I arrived at the sergeant[']s
> office[,] three sergeants or lieutenants . . . [were] there[.]  [O]ne left
> and the other two stayed[.]  [O]ne of them asked what happen[ed]
> between me and Turriglio.  [The] [I]nspector [G]eneral's [O]ffice [had]
> informed them of what [had] happen[ed].  One of the sergeant[']s or
> lieutenants told me what to write.   I tried to write what really took
> place between me and [O]fficer Turriglio.  I was told ['T]hat[']s not
> good enough.[']  I informed the sergeant or lieutenants that I [had] filed
> a federal complaint against [O]fficer Turriglio.  I was still told what to
> write[.]  [W]hen I refused that[']s when threats . . . [were] made and I
> was called a nigger.  I was told [I']m not leaving the sergeant[']s office
> intell [sic] I give them what th[e]y want [sic]. . . .  I repeat [that] my
> statement was false and forced and I took no oath[;] it was given out of
> fear for my safety. . . .  I can[']t identify [the two sergeants or
> lieutenants] by name because th[e]y were not wearing badges or name
> tags. . . .  I [would] like to add [as defendants in my action] Green Cor.
> Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees
> here at Greene [Correctional Facility] . . . .

(*Id*. at 2.)

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket

for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to

supplement his Complaint, such permission was unnecessary under Fed. R. Civ. P. 15(a) since

Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was

requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a

supplemental pleading was not in conformity with Fed. R. Civ. P. 10(b), Local Rule 10.1, and

Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down

into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs

contained in the original pleading.  (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint.  Rather, on

August 29, 2007, Plaintiff filed another letter with the Court.  (Dkt. No. 15.)  In the letter,

Plaintiff requested "the court[']s permission to make a formal complaint, 'not to amend my

complaint.'" (*Id*. at 1.)  The claim that Plaintiff wished to assert arose from events occurring on

August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail.  (*Id*. at

1-2.)  More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's

housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive

court order issued by the U.S. District Court for the Southern District of New York on May 31,

2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2)

that same day, while signing for legal mail (from the New York State Court of Claims) in front of

Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered

with my mail . . . [because he was] the officer who had access to all inmate[']s legal mail." (*Id*.)

As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant

Officer Turriglio removed from the law library intell [sic] this matter is resolved."  (*Id*. at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the

docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need

not request permission to file a Supplemental Complaint since he had the right to do so without

permission under the circumstances, and that his two-page, single-spaced letter could not serve as

his supplemental pleading since the document was not double spaced, the text was not broken

down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs

contained in the original pleading), as well as for the additional reason that Plaintiff had failed to

indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a).

(Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

### C.      Defendant's Motion to Dismiss and Plaintiff's Response

On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure

to state a claim upon which relief might be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt.

No. 11.)  Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action

is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available

administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the

PLRA since that statute requires that any inmate claiming damages related to mental and

emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff

has not made.  (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his

available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited

Plaintiff's exhaustion of administrative remedies so as to estop Defendant from asserting

Plaintiff's failure to exhaust as a defense, and/or (2) under the circumstances, special

circumstances existed justifying his failure to exhaust his administrative remedies.  (Dkt. No. 18,

Plf.'s Memo. of Law, "Point I.")  In response to Defendant's second argument (i.e., regarding

Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the

"continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA.  (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

## II.    RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[1] or (2) a challenge to the legal cognizability of the claim.[2]

---

[1]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[3] The purpose of this rule is to "facilitate a proper decision on the merits."[4] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

---

under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[3]        *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[4]        *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[5]        *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

requirements that exceed this liberal requirement.[6]  However, it is well established that even this liberal notice pleading standard "has its limits."[7]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[8]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[9]  Rather than turning on the

---

[6]  *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed. R. Civ. P. 8[a][2]'s pleading standard as "simplified").

[7]  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[8]  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[9]  The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately

*conceivability* of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[10]  Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights

---

stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[10]      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

violations or where the complaint is submitted *pro se*."[11]  In other words, while all pleadings are

to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra*

degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and

interpret them to raise the strongest arguments that they suggest."[12]  In addition, when addressing

a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend

at least once when a liberal reading of the complaint gives any indication that a valid claim might

be stated."[13]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended."[14]  Moreover, an opportunity to amend should be denied where "the

---

[11]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[12]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[13]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[14]     *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[15]

Finally, it should be remembered that Fed. R. Civ. P. 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed. R. Civ. P. 56 motion for summary judgment if the court considers materials outside the pleadings.[16] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider any documents provided by the plaintiff in opposition to defendants' motion to dismiss, *to the extent those documents are consistent with the allegations in the complaint*.[17]

---

[15]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[16]     *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[17]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

### III.     ANALYSIS

As stated above in Part I.C. of this Report-Recommendation, Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made.  (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)  Because I conclude that Defendant's lack-of-physical-injury argument for dismissal is somewhat stronger than is his failure-to-exhaust argument, I address the lack-of-physical-injury argument first.

### A.     Requirement of Physical Injury

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. 1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1) "bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to stop "eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull, (5) "placed [Plaintiff] o[n] the wall and started to slap me [o]n the back of the head," and (6) "placed his pocket knife to his [own] face and told [Plaintiff] he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing] around."  (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)  As a result of this misconduct, Plaintiff alleges that he suffered "mental anguish and distress."  (*Id*. at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that Plaintiff suffered any *physical injury* as a result of Defendant's alleged misconduct.  Generally, some slaps on the back of the head do not constitute a cognizable *physical injury* under the PLRA.  *See Jackson v. Johnson*, 04-CV-0110, 2005 U.S. Dist. LEXIS 21720, at *18-19, 32 (M.D. Ga. June 17, 2005) (no physical injury under PLRA occurred where corrections officer, *inter alia*, "slapp[ed] [prisoner] in the face immediately [after shouting derogatory remark to him]").  This is especially true where, as here, there is no allegation that the slaps resulted in any observable or diagnosable medical condition requiring treatment by a medical care professional.  *See Jarriett v. Wilson*, 162 Fed. App'x 394, 400-01 (6th Cir. 2005) (mild swelling of left toe with some pain but no need for medical treatment was not cognizable physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x 797, 799 (11th Cir. 2007) ("mere bruising from the application of restraints [resulting in welts]" was not cognizable physical injury under PLRA); *Silgar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (prisoner's "sore, bruised ear lasting for three days" was not cognizable physical injury under PLRA); *cf. Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1998) (citing *Silgar v. Hightower* for the point of law that the physical injury under the PLRA must be more than "de miminis"), *accord*, *Voorhees v. Goord*, 05-CV-1407, 2006 WL 1888638, at *10, n.2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson*, 96 F. Supp.2d 244, 248 (W.D.N.Y. 2000) (same).[18]

---

[18]     *See also Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999) (prisoner's claim that corrections officers forced him to "dry shave" during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only *de minimis* injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], *opinion reinstated in part on rehearing*, 216 F.3d 970 (11th Cir. 2000); *Russell v. Johnson*, 07-CV-0008, 2008 WL 480020, at *2 (M.D. Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable physical injury under PLRA).

I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions.  *See Espinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing] [him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail*, 106 F. Supp.2d 559, 563, 569 (S.D.N.Y. 2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf. Abreu v. Nicholls*, 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not actionable under the Eighth Amendment].[19]

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion.  None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007.  (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s

---

[19]    *See also Borroto v. McDonald*, 04-CV-0165, 2006 WL 2789152, at *1 (N.D. Fla. Sept. 26, 2006) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of *physical injury* that is cognizable under PLRA); *cf. Barker v. Lehrer*, 02-CV-0085, 2004 WL 292142, at *4-5 (N.D. Tex. Jan. 30, 2004) (fact that prisoner was "hit . . . with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute *physical injury* under PLRA).

Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition

Papers].)

      Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer

Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other

Mess Hall workers, "McCloud knows I doesn't [sic] play."  (Dkt. No. 6.)  He alleges, in his letter

to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant,

Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant.  (Dkt.

No. 12, at 1.)  He alleges, in his letter to the Court of August 29, 2007, that, on August 21, 2007,

he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail . . . [because Officer Turriglio

was] the officer who had access to all inmate[']s legal mail."  (Dkt. No. 15, at 1-2.)  None of

these three documents contains any allegation that Plaintiff suffered any physical injury at all.

Furthermore, none of the three documents sufficiently connects any of the emotional distress

described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly

suggesting that the cause of the emotional distress described in the documents was contact

between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

      The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a

"physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to

the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff

with "anxiety."  (Dkt. No. 12, at 1.)  However, this allegation of "anxiety" is insufficient for two

reasons.  First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was

caused by the incident on May 31, 2007–as opposed to being caused by the incident on June 18,

2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder.

Second, and much more importantly, numerous courts have held–correctly, I believe–that

physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea,

hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not

"physical injuries" for purposes of the PLRA.[20]  This is especially true where, as here, the

plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

Finally, for reasons similar to those articulated above, I find that the affidavit submitted

by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he

suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury

---

[20]        *See*, *e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998)
(weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for
purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal.
Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations
of emotional distress do not qualify as a prior showing of physical injury [for purposes of the
PLRA].") [internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3
(M.D. Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of
PLRA); *Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006)
(migraines, dry mouth, and loss of appetite caused by mental health problems not "physical
injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL
3408176, at *4 (M.D. Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches
from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v.
Williams*, 03-CV-0192, 2005 WL 5993338, at *4 (N.D. Fla. Oct. 14, 2005) (thirty-minute
episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart,
and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F.
Supp.2d 200, 203, 205 (D. Me. 2003) ("permanent traumatization" not "physical injury" for
purposes of PLRA); *Todd v. Graves*, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (stress,
hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of
PLRA); *Ashann-Ra v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic
conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for
purposes of PLRA); *McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation
of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of
PLRA); *Cain v. Virgina*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful
headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-
Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe
headaches caused by emotional distress  not "physical injury" for purposes of PLRA).

as a result of subsequent incidents).  (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

### B.      Exhaustion of Available Administrative Remedies

In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[21]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[22]  The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[23]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.[24]  First, an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence.  A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to

---

[21]      42 U.S.C. § 1997e.

[22]      *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[23]      7 N.Y.C.R.R. § 701.7.

[24]      7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts

a hearing within seven (7) working days of receipt of the grievance, and issues a written decision

within two (2) working days of the conclusion of the hearing.  <u>Second</u>, a grievant may appeal the

IGRC decision to the facility's superintendent within four (4) working days of receipt of the

IGRC's written decision.  The superintendent is to issue a written decision within ten (10)

working days of receipt of the grievant's appeal.  <u>Third</u>, a grievant may appeal to the central

office review committee ("CORC") within four (4) working days of receipt of the

superintendent's written decision.  CORC is to render a written decision within twenty (20)

working days of receipt of the appeal.

It is important to emphasize that any failure by the IGRC or the superintendent to

adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next

level, including CORC, to complete the grievance process.[25]  It is also important to emphasize

that DOCS provides for an expedited procedure for the review of grievances alleging employee

harassment.[26]  While this procedure provides for review of the grievance directly by the facility

---

[25]     7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be
appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002),
*vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v.
McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a
plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has
failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.
Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to
his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*,
03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.)
(recommending that the Court grant Defendants' motion for summary judgment, in part because
plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's
IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by*
Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

[26]     7 N.Y.C.R.R. § 701.2.

superintendent, it still requires the filing of a grievance by the inmate.[27]  Furthermore, the superintendent's decision must be appealed to CORC in order for the inmate to complete the grievance process.[28]

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[29]  However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[30]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[31]  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[32]  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged

---

[27]     *Id*.

[28]     *Id*.

[29]     *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

[30]     *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[31]     *Hemphill*, 380 F.3d at 686 (citation omitted).

[32]     *Id.* [citations omitted].

that justify the prisoner's failure to comply with the administrative procedural requirements."[33]

Before I proceed to an analysis of the above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed. R. Civ. P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12[b][1]) established by the PLRA. *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a §1983 suit . . ., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available.  Snider's answers [on a form complaint] cannot establish that.").

Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case.  *See Jones v. Block*, 127 S. Ct. 910,

_____

[33]     *Id*. [citations and internal quotations omitted].

914-915, 918-923 (2007).  A prisoner has no independent *duty* to plead facts plausibly suggesting

that he exhausted his available administrative remedies, in order to state an actionable claim

under 42 U.S.C. § 1983.  *Block*, 127 S. Ct. at 919-21.  "[T]his is not to say that failure to exhaust

cannot be a basis for dismissal for failure to state a claim."  *Id*. at 921.  If a prisoner *chooses* to

plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his

available administrative remedies, then his Complaint may be dismissed for failure to state a

claim.  *Id*. at 920-21.  Simply stated, if a prisoner says nothing or little about exhaustion in his

*pro se* civil rights complaint, he is likely protected from a Fed. R. Civ. P. 12(b)(6) motion to

dismiss premised on failure to exhaust.  However, if he says too much about exhaustion in that

complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as

the saying goes.  This is what has happened here, according to Defendants.

### 1.    Availability of Administrative Remedies

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by

Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on

even the most liberal of constructions of Plaintiff's Complaint.  More specifically, I find that

Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not

available to prisoners at Greene C.F. during the time in question (i.e., between the occurrence of

the event in question, on May 31, 2007, and the expiration of the deadline by which to file a

grievance 14 days later, on or about June 14, 2007).  Indeed, Plaintiff quite expressly alleges that

there was a prisoner grievance procedure at Greene C.F.  (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual

allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental

pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion.  None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question.  (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

## 2.    Estoppel

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint.  In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007).  Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil[]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]."  (*Id.*) Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory.  Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. in no way constitutes an *action* by Defendant that inhibited Plaintiff from filing a grievance at Greene C.F.

24

about the events giving rise to his claims in this action.  At best, these statements by Defendant

constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any

appeal reached to the final level of review, by DOCS' Central Office Review Committee

("CORC").  Notifying an inmate of the *prospect* of *initial* failure (due to alleged antipathy for

inmates or even sympathy for correctional officers, held by various *other* officials, participating

in the grievance process) is hardly the sort of adverse *action* that is required to estop a

correctional officer from asserting the legal defense of non-exhaustion.

Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that

Defendant took any actions that inhibited Plaintiff from exhausting his available administrative

remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a

defense.  Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him"

or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his

head," and (3) placed a pocket knife to *his own face* and threatened to cut *his own face* and blame

it on Plaintiff in order to let the other inmates know he was not "play[ing]" around.  (Dkt. No. 1,

¶ 6 [Plf.'s Compl.].)  The problem with these allegations (at least from Plaintiff's perspective) is

that they have absolutely nothing to do with the filing of any grievance, or even the making of

any verbal complaint, by Plaintiff.  Simply stated, while the alleged conduct is (of course)

deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from

exhausting his administrative remedies.

Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual

allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental

pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's

motion, I would reach the same conclusion.  None of those documents allege facts plausibly

suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the

time in question.  (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed

8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

 In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18,

2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud

knows I [don't] play" around.  (Dkt. No. 6.)  This allegation fails for the same reason as the

allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do

with the filing of any grievance, or the making of any complaint, by Plaintiff.  Moreover,

Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff

had decided not to exhaust his available administrative remedies.  (The deadline by which

Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June

14, 2007.)[34]  Thus, it could not have possibly inhibited Plaintiff from exhausting his available

administrative remedies.

 Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant

said to Plaintiff, "I spok[e] to the Imam [about] what[']s going on[.]  [Y]ou can talk to me man to

man."  (Dkt. No. 12.)  An attempt to informally resolve a dispute (which is encouraged in DOCS'

grievance process) is not an act inhibiting an inmate from exhausting his available administrative

remedies.  Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other*

*than Defendant* coerced Plaintiff into making a false statement about what had taken place

---

[34] As described above, an inmate must file a complaint with the facility's IGP clerk
within 14 calendar days of the alleged occurrence.

between Plaintiff and Defendant.  (*Id.*)  Plaintiff alleges no action by *Defendant* on July 24, 2007.

Nor does Plaintiff explain how the false statement on *July* 14, 2007--whatever that false

statement may have been--in any way caused his decision by *June* 14, 2007, not to exhaust his

available administrative remedies.

Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to

"fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on

August 21, 2007.  (Dkt. No. 15.)  However, the sole reason for this fear was the (alleged) fact

that Defendant "had access to all inmate[']s legal mail."  (Dkt. No. 15.)  Moreover, this fear

occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not

exhaust his available administrative remedies by June 14, 2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before

the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action

and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and

had his personal area searched during late evening or at predawn hours."  (Dkt. No. 18, Plf.'s

Affid., ¶ 4.)  Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had

happened to . . . [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer

Turriglio]" since the "Pigford . . . incident[] occurred prior to that of the plaintiffs' [sic]."  (*Id.* at ¶

5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was

beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio

from asserting Plaintiff's failure to exhaust as a legal defense).  The problem with Plaintiff's

sworn assertion is that it is so patently false as to be implausible (if not sanctionable).  I take

judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring

(which is the only federal court action that has been filed by Shakeith Pigford, according to the

Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the

current action, on May 31, 2007. *See Pigford v. Turriglio*, 07-CV-0687, Complaint (N.D.N.Y.

filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that

the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three*

*days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio*,

07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as

to when he filed his grievance and was assaulted. *Id*. at ¶¶ 4(b), 6. However, given the clear

factual inaccuracies of Plaintiff's other sworn statements regarding Inmate Pigford's experience, I

find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff from filing a

grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible*.

Furthermore, because I find that the absence of this factual allegation (regarding Inmate

Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's

Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a

grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent*

with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of

Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See*,

*supra*, note 17 of this Report-Recommendation [citing cases].)

In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow

inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a

knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the

grievance . . . ."  (Dkt. No. 18, Plf.'s Affid., ¶ 4.)  For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened.  I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court–discussed above, and below.  (*See*, *infra*, Part III.C. of this Report-Recommendation.)  The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm.  Again, actions *by third-persons* cannot estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense.  Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint.  Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint.  (*See*, *supra*, note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in question on May 31, 2007.  As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant.  More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-- *well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action.  (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].)  Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

29

###   3.   "Special Circumstances" Justifying Failure to Exhaust

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint.  Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain.  Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

Morever, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion.  None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007).  (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)  I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007.  (*See* Dkt. No. 18,

30

Plf.'s Affid., ¶¶ 5[B]-[C].)  However, Plaintiff does not explain why the "letter of complaint" that

he sent to the superintendent was not in the form of a grievance filed with the Greene C.F. IGRC,

as required by 7 N.Y.C.R.R. § 701.2.  Nor does Plaintiff explain why he failed to write to CORC,

following whatever action the superintendent did or did not take with respect to the "letter of

complaint."  Nor does Plaintiff allege that, during the time in question, he was laboring under any

sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his

attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of

complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's

Complaint for alleging facts plausibly suggesting that he failed to exhaust his available

administrative remedies following the incident on May 31, 2007.

### C.   Second Alternative Ground for Dismissal: Misrepresentations to Court

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement,

falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff

was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a

grievance against Officer Turriglio–a temporal impossibility since the event giving rise to Inmate

Pigford's grievance had not even yet occurred as of May 31, 2007.  (*See*, *supra*, Part III.B.2. of

this Report-Recommendation.)  This is not the only misrepresentation that Plaintiff has made to

the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes"

for purposes of 28 U.S.C. § 1915's so-called "three strikes rule."  *See McCloud v. D.O.C.*, 06-

CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City

Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74;

dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06);

*McCloud v. D.O.C.*, 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing

New York City Department of Correction Identification Number 141-06-05253, with a date of

birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on

12/8/06).

      Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where

he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in

any state or federal court relating to his imprisonment?" but then listed only one such lawsuit

(i.e., *McCloud v. Buckhalter*, 07-CV-4576 [S.D.N.Y.]) in response to the form complaint's

directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently

pending or closed, in the space provided on the next page."  (Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

      While a plaintiff is under no duty to provide this information in order to state an

actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint

calling for such information, and *swore* to the truthfulness of his answer.  There is simply no

excuse for making such a sworn misrepresentation to the Court.  District Judges from this Court

have indicated a willingness to sanction *pro se* litigants for making such misrepresentations.  *See,*

*e.g., Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21,

2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.,

premised on alternative ground that the plaintiff should be sanctioned for making a material

misrepresentation to the Court in his complaint); *Muniz v. Goord*, 04-CV-0479, 2007 WL

2027912, at *6 & n.32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review,

Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should

be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting

cases]. I have considered less drastic sanctions and have found them to be inadequate to curb

this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's

Complaint *sua sponte*, under Fed. R. Civ. P. 11, as a sanction for making multiple sworn

misrepresentations to the Court.

### D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested

As stated above in Part I.A. of this Report-Recommendation, as a result of the

misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order

"secur[ing] [Plaintiff's] safety and mak[ing] sure there will be []no[] retaliation from coworkers

or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny

complaints or grievances [have] been filed against him in the past concerning brutality"; and (3)

"$1,000,000 for mental anguish and distress." (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the

alternative ground that Plaintiff has alleged no facts plausibly suggesting his entitlement to either

form of relief. The first form of relief, which is essentially an injunction or temporary restraining

order, must be supported by documents showing cause for the granting of the requested

relief–which Plaintiff's Complaint does not do. *See* Fed. R. Civ. P. 65; N.D.N.Y. L.R. 65.1, 65.2,

7.1(f), 7.1(b)(2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may

embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal

claim against Defendant. Rule 8 of the Federal Rules of Civil Procedure–which requires that a

plaintiff must assert enough facts in his complaint (and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him–does not permit such a "bootstrap" pleading.[35]  Nor does Plaintiff even provide cause in support of what is essentially a  request for discovery.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b),[36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be []no[] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality."  (Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

---

[35]     *See Balliett v. Heydt,* 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at *3-9, 29 (E.D. Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim--based on information generated in 1997, several years after the filing of the complaint in 1995--as a "means of circular pleading and bootstrapping"); *Hill v. Austin*, 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at *10 (N.D. Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.*, 446 F.3d 365, 377 (2d Cir. 2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson*, 95-CV-0403, 1995 U.S. Dist. LEXIS 22445, at *6 (W.D. Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of retaliation . . . .") [citation omitted].

[36]     *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .").

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be **GRANTED**; and it is further

**RECOMMENDED** that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 17, 2008
 Syracuse, New York

George H. Lowe
United States Magistrate Judge